**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MONTROSE HILLBILLIES II, LLP,** | : | **Civil No. 3:14-CV-2264** |
| | : | |
| **Plaintiff** | : | **(M.J. Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **WPX ENERGY KEYSTONE, LLP and** | : | |
| **STERN MARCELLUS HOLDINGS, LLC** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

## I.   INTRODUCTION

This is an action brought by the Montrose Hillbillies II, LLP ("Montrose Hillbillies" or "plaintiff") seeking to quiet title in a 77.2 acre parcel of real property situated in Susquehanna County, Pennsylvania.  The Property is subject to a "paid up" lease that was entered into between the prior owner of the Property and a predecessor in interest to the defendants, for purposes of permitting the lessee to conduct oil and gas exploration activity on the Property.  The issue in this case is whether the defendants properly extended the term of the lease by tendering an extension payment to the prior owner of the Property, rather than to the plaintiff, who admits that the defendants were never notified about the change in the Property's ownership.

The plaintiff maintains that the lease is no longer binding upon the plaintiff, and seeks entry of an order declaring that the lease expired.  The defendants, who are assignees of the original lease, contend that the lease was properly extended for another five-year term pursuant to the express terms of the lease, even though it was extended by tendering the extension payment to the prior owner of the Property, and the prior lessor, because neither the prior lessor nor the plaintiff ever provided the defendants with sufficient notice regarding the change in the Property's ownership which occurred three years earlier.  The plaintiff seems to agree that no such notice was ever communicated; however, the plaintiff argues that this is irrelevant because neither the defendants nor any prior parties in interest to the lease ever recorded the lease in Susquehanna County, and the recording of a memorandum of lease was insufficient to put the plaintiff on notice regarding the lease's terms.  In essence, the plaintiff acknowledges that the lease exists or at least existed; the plaintiff acknowledges that the terms of the lease include a provision allowing for the lease term to be continued for another five-year period upon payment of $100 per acre; yet the plaintiff argues that these contractual terms are irrelevant because the plaintiff had inadequate notice regarding these terms and because the defendants improperly tendered the extension payment to the former owner of the Property.

The parties have now filed cross-motions for summary judgment. We recognize that the outcome of these motions and this quiet title action will necessarily work some hardship on a party that appears to have acted in good faith. If the lease is extended, the plaintiff may feel that its property interests were unfairly affected. In contrast, if the lease extension is declared null and void, then the defendant as a good faith lessee will be deprived of the benefit of its agreement through no fault of its own.  Although at first blush there is a superficial appeal to the plaintiff's arguments regarding the failure to record the lease and the incomplete nature of the information set forth in the recorded memorandum of lease, we find based upon the undisputed facts of record and recent legal holdings in this field that the defendants are entitled to summary judgment in their favor. Pennsylvania law does not require parties to record oil and gas leasehold interests. Despite this fact, a memorandum of this lease was recorded, and even though there were limits to the information contained within the memorandum of lease that was recorded pursuant to Pennsylvania law, the memorandum of lease was clearly sufficient to place the plaintiff on "inquiry notice" of the lease's existence, and obligated the plaintiff to have undertaken at least some minimal due diligence to obtain a copy of the lease and understand the terms of the lease that burdened the Property prior to purchasing.  The plaintiff's apparent failure to do so despite having been placed on inquiry notice prevents it from being a true good-faith

3

purchaser entitled to avoid the burdens of the lease, and the defendants' tender of a lease extension payment to the prior owner and lessor was adequate under Pennsylvania law to extend the term of the lease for another five years. Accordingly, the Court will enter summary judgment in favor of the defendants.

## II.    BACKGROUND

Although the parties have each moved for summary judgment in their favor, and thus believe that the relatively few and largely undisputed facts of this case compel judgment in their favor, they essentially agree on all of the relevant facts. This case thus boils down to a disagreement over the import of those facts, and their legal consequence to the parties' contractual relationship.

On July 30, 2007, Florence Simons entered into a "Paid Up Oil and Gas Lease" with Elexco Land Services, Inc. ("Elexco") (the "Lease") covering the 77.2 acres in Susquehanna County that make up the Property at issue in this case. Simons was the lessor and Elexco the lessee, and the Lease provided for a primary term of five years.  To address successors-in-interest, the Lease contains a change-of-ownership provision that provides:

> 9.    Ownership Changes.  The interest of either Lessor or Lessee hereunder may be assigned, devised, or otherwise transferred in whole or in part, by area and/or by depth or zone, and the rights and obligations of the parties hereunder shall extend to their respective heirs, devisees, executors, administrators, successors and assigns.  No change in Lessor's ownership shall have the effect of reducing the

rights or enlarging the obligations of Lessee hereunder, and no change
in ownership shall be binding on Lessee until 60 days after Lessee has
been furnished the original or duly authenticated copies of the
recorded documents establishing such change of ownership to the
satisfaction of Lessee or until Lessor has satisfied the notification
requirements contained in Lessee's usual form of division order . . .

(Doc. 29, Ex. 2, Def. Appendix A, Lease, ¶ 9.)  Additionally, the Lease provides a

means by which the Lessee could extend the Lease for an additional five-year

terms by paying the Lessor $100 per acre.  This provision states as follows:

15.  Extension of Primary Term. Lessee is hereby given the exclusive
option and right to extend the primary term of this lease as to all or
any part of the leased premises, for an additional five (5) years,
commencing with the expiration of the original primary term
described in paragraph 2 above.  This option may be exercised by
Lessee at any time during the original primary term by paying to
Lessor the sum of $1.00 and other good and valuable consideration
per net mineral acre for each net mineral acre hereunder that is being
extended by Lessee and is not otherwise being maintained by other
provisions hereof (the "Extension Payment").    The Extension
Payment may be made by check or draft mailed, tendered or delivered
to Lessor at any time during the original primary term hereof. . .
Lessee shall have the right to record a notice of extension of the
primary term of this lease describing the portion of the leased
premises covered by such extension; provided, however, the failure of
Lessee to record such entire notice shall not affect the validity of the
extension.

(*Id.*, ¶ 15.)

There is no dispute that the original parties to the Lease never had it

recorded with the Susquehanna County Recorder of Deeds.  Instead, on September

5

5, 2007, Ms. Simons and Elexco executed and recorded a Memorandum of Lease. (Doc. 29, Ex. 2, Appendix, Memorandum of Lease.)  The Memorandum of Lease is a spare document, providing no information other than the fact of the Lease's existence, the names and addresses of Ms. Simons and Elexco as Lessor and Lessee, respectively, a description of the Property, and the term of the Lease.  The Memorandum of Lease also specifically states that it "has been executed for the purpose of indicating the existence of the aforesaid Lease and shall not be considered in any way a modification or alteration of the Lease Agreement."  (*Id.*) Finally, the Memorandum of Lease states that "[t]he Lease further provides that the lease continues beyond its primary term for so long thereafter as the leased substances are produced from the said lands or any portion thereof is pooled, unitized or consolidated with other lands in accordance with the lease terms."  (*Id.*)

In March 2008, Elexco assigned its interest in the Lease to Southwest Energy Production Company ("Southwestern").  Southwestern, now the lessee under the Lease, recorded the assignment in Susquehanna County Recorder of Deeds in April 2008.

The following year, on July 2, 2009, the plaintiff purchased the Property from Ms. Simons.  (Am. Compl., ¶¶ 3, 4, 16, and Ex. 1.)  Notably, the deed transferring Ms. Simons's ownership of the Property to the plaintiff specifically

refers to the Lease, and provides that the sale of the Property is subject to the Lease:

> UNDER AND SUBJECT to a certain gas and oil lease between Grantor herein and Elexco Land Services, Inc., dated July 30, 2007, and recorded in Susquehanna County Instrument No. 200709674. Said Lease was thereafter assigned by Elexco Land Services, Inc. to Southwestern Energy Production Company, dated March 17, 2008, and recorded in Susquehanna County Instrument Number 200804257. Grantor hereby assigns all her right, title and interest in said Lease to Grantee herein, its successors and/or assigns.

(Am. Compl., ¶¶ 16-17, Ex. 1.)  Although the plaintiff entered into this transaction for the sale of the Property "under and subject" to the Lease, the plaintiff never obtained a copy of the Lease from Ms. Simons or anyone else prior to executing the deed of sale.  (Doc. 30, Def. Statement of Material Facts ("Def. SMF") ¶ 13.)  Indeed, the plaintiff never obtained a copy of the Lease prior to initiating this lawsuit.  (Id., ¶14.)  Additionally, at no time following the sale did Ms. Simons or the plaintiff "furnish[]" the original or duly authenticated copies of the recorded documents establishing such change of ownership to the satisfaction of Lessee" or otherwise "satisfy[y] the notification requirements contained in Lessee's usual form of division order," by notifying either Elexco or Southwestern.  (Id., ¶ 15.)

Not having received any notice regarding a change in the ownership of the Property or a change in the identity of the Lessor under the Lease, in June 2012, prior to the expiration of the preliminary five-year lease term, Southwestern

7

provided Ms. Simons with a lease-extension payment of $7,720, so that the leasehold interest on the property would be extended for another five years. (Doc. 29, Appendix, Ex. B and C; Def. SMF ¶ 16.)  On July 6, 2012, Southwestern filed a Notice of Extension of Oil and Gas Lease dated June 26, 2012, providing notice that the primary term of the Lease was extended for an additional five-year period. (Am. Compl., ¶ 23 and Ex. 5; Def. SMF ¶ 17.)

In November 2012, Southwestern assigned its interest in the Lease to WPX Energy Keystone, LLC and Stern Marcellus Holdings, LLC, making these entities the Lessees under the Lease.  This assignment was recorded in Susquehanna County.  (Am. Compl., ¶ 13; Doc. 29, Appendix, Ex. D; Def. SMF ¶ 18.)

In January 2015, WPX Energy Keystone, LLC assigned its interest in the Lease to SWN Production Company, LLC.  This assignment was recorded, and SWN and Stern are the current lessees under the Lease.

On February 23, 2015, the plaintiff filed an amended complaint to quiet title and for declaratory judgment, seeking a judgment that the lease extension was not binding upon the plaintiff, and that the Lease has expired.  (Am. Compl.; Def. SMF ¶ 20.)  Following a brief period of discovery, the parties filed the pending cross-motions for summary judgment.  (Docs. 27, 29.)

## III.   DISCUSSION

### A.   Rule 56 – The Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.*, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving

9

party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

It is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co.*

*Of Newark NJ v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982), *see Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)(citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

These rules apply equally in cases such as this one, where the parties have filed cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When presented with cross-motions for summary judgment, the court is to consider each motion separately. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir. 1993); *see also Wernicki-Stevens v. Reliance Life Ins. Co.*, 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

### B.     The Plaintiff Is Not Entitled to Summary Judgment Because the Lessees Failed to Record the Lease

The plaintiff's claim in this case seems to be predicated on its assertion that it is a good-faith purchaser who acquired its fee interest in the Property without sufficient notice of the Lease or its terms, and is not entitled to extinguish the

Lease. The plaintiff makes this argument with very little legal support, arguing instead that the defendants and the parties who entered into the Lease failed to record it at their peril, relying instead upon an abbreviated Memorandum of Lease that did not spell out all of the ways in which the lessee could extend the lease term. Despite admitting that it was aware of the Lease and that it did nothing to obtain a copy and review its provisions prior to purchasing the Property from Ms. Simons, the plaintiff now claims that the lease extension payment is void and that the Lease has terminated. As discussed below, the plaintiff relies on limited legal support for this argument, and misconstrues the reach of that legal support and its relevance to the actual facts of this case.

The plaintiff relies chiefly upon *Lesnick v. Chartiers Natural Gas Co.*, 889 A.2d 1282 ( Pa. Super Ct. 2005). *Lesnick* involved a parcel of real property that was subject to a 1924 agreement under which the property's owners were granted free gas in exchange for giving a company the right to drill for natural gas on the property. This 1924 lease was properly recorded under Pennsylvania law. In 1948, the lease was allegedly modified to provide that the owners agreed that they would be entitled to free gas for their farm for as long as they owned it, but that the right to free gas would terminate at the time they sold the farm. 889 A.2d at 1283. This purported 1948 agreement, or modification, was never recorded, but was apparently identified in certain papers that the defendant gas company received

after it succeeded to the oil and gas lease in 1980.  The new property owners later sued the defendant for an order declaring that they were entitled to continue receiving free gas from the defendant pursuant to the 1924 lease.  The gas company objected to the claim, asserting that it was modified by the unrecorded 1948 lease modification.  The trial court rejected the defendant's arguments, and the Superior Court affirmed.

In its ruling, the Superior Court observed that all of the deeds in the title indicated that they were subject to oil and gas leases.  *Id.* at 1284.  The court specifically noted that

> the 1924 lease which gave the farm owner the right to free gas in exchange for allowing the oil company to drill and maintain a well was recorded.  The oil and natural gas rights are part of the land, and therefore have to be recorded.  Although oil and gas rights may not be considered the same as other real estate interests for tax and other purposes, since granting an oil and gas lease limits the rights of a landowner who might buy the property, they must be on record to protect the owner against the claim of a bona fide purchaser.

*Id.*  The court thus found that to be effective against a subsequent purchaser, the 1948 lease had to have been recorded, and it was not.  The court stated that "[a] *bona fide* purchaser is one who buys real or personal property without notice of claim of others' outstanding rights in the property.  The Lesnicks had notice of claim in the 1924 lease but no notice of claim under the purported 1948 lease.  The Lesnicks are therefore *bona fide* purchasers subject to the terms of the recorded

13

documents but are innocent of knowledge of the alleged 1948 termination of gas rights." *Id.* at 1285.

In 2014, the Superior Court reaffirmed its holding in *Lesnick*, explaining that "[t]he legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements[.]  21 P.S. § 357.  A subsequent purchaser is entitled to rely on the information contained in these records."  *Nolt v. TS Calkins & Assocs., LP*, 96 A.3d 1042, 1048 n.5 (Pa. Super. Ct. 2014).

The plaintiff in the instant case reads these decisions to mean that a purchaser of real property who relies exclusively on what it discovers in the county recording office is a good-faith purchaser who has no responsibility to undertake any further inquiry into leases or other burdens that might affect title to the property.  We believe that the plaintiff stretches the holdings of *Lesnick* and *Nolt* in a way that is inconsistent with other Pennsylvania law governing a purchaser's duty to undertake reasonable inquiry into the title to the property being purchased before he may be considered a *bona fide* purchaser.

Pennsylvania law has long recognized that "'[i]t is always the duty of a purchaser of real estate to investigate the title of his vendor[,]' and the purchaser must exercise due diligence in this regard.  *Nolt*, 96 A.3d at 1048 (quoting *Ohio River Junction R. Co. v. Pennsylvania Co.*, 222 Pa. 573, 72 A. 271, 273 (1909)).

14

In another decision, the Pennsylvania Supreme Court explained the scope of this obligation as follows:

> [Purchasers'] title could be affected only with what they actually or constructively knew at the time of the purchase; necessarily, as to the latter, by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the tite [sic], and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and in the various courts of record whose territorial jurisdiction embraced the land in dispute; but not of what they could not have learned by inquiry of those only whom they had reason to believe knew of the facts.

*Lund v. Heinrich*, 189 A.2d 581, 585 (Pa. 1963) (internal citations omitted).  The Superior Court in *Nolt*, on which the plaintiff relies, interpreted this holding in *Lund* to mean that "a purchaser fulfills his or her due diligence requirement when he or she examines the documents recorded in the county or counties in which the property is situated ***and*** when he or she asks the possessor about the title, as well as any other people the purchaser has reason to believe would know about the status of the property's title."  96 A.3d at 1048 (emphasis added).  Following that guidance, the court in *Nolt* found that the purchaser met its obligations to conduct due diligence where the facts showed that they checked the county records *and* spoke to the owner of the property regarding the scope of his title:

> The uncontroverted facts establish that Calkins sufficiently executed the due diligence requirement attendant with the conveyance of an interest in land.  [The company's landman] searched the property records in Bradford County, spoke with the owner of record and the

15

possessor . . . who told her that he owned the property she sought to lease on Calkins' behalf.  This investigation revealed no indication of a possible defect in Joseph Cullen's title.  We conclude that as a matter of law, Calkins met its due diligence obligation.

*Id.*

The undisputed facts of this case show that the plaintiff was on notice regarding the existence of the Lease in multiple ways.  As an initial matter, the recording of the memorandum of lease plainly put the plaintiff on notice that there existed a leasehold interest for gas and oil rights that had an effect on the title.  The memorandum of lease was recorded pursuant to Pennsylvania law in lieu of recording the entire lease.[1]  The memorandum itself states that it was executed and

---

[1] Although Lesnick seems to suggest that oil and gas leasehold interests must be recorded, Pennsylvania statutory law appears to provide that in general leases and subleases may, but need not, be recorded to be valid.  *See* 21 P.S. § 404 ("Any lease or sublease or agreement to lease or to sublease, acknowledged according to law by the lessor*, may but need not*, unless otherwise required by law, be recorded in the office for the recording of deeds in the county or counties wherein are situate the premises thereby leased or to be leased.").(emphasis added).   The same statute allows parties to record a "memorandum of lease", which may be recorded "in lieu of the recording of such a lease".  21 P.S. § 405 (providing requirements for a memorandum to be sufficient).  The statute further provides that "[t]he recording of any such lease . . . or memorandum in accordance with the provisions of this act shall constitute constructive notice to subsequent purchasers, mortgagees and judgment creditors of the lessor of the making and of the provisions of such lease, sublease or agreement, including any purchase or refusal provisions set forth in the lease, sublease or agreement."  21 P.S. § 407.

recorded "for the purpose of indicating the existence of the aforesaid lease and shall not be considered in any way a modification or alteration of the Lease Agreement." (Def. SMF ¶ 7.) Thus, not only did the memorandum of lease inform the plaintiff regarding the existence of the Lease, it expressly put the plaintiff on notice that the memorandum was not the entire lease, and did not purport to modify the terms of that document, which is the actual legal document burdening the property. Despite being put on notice of the Lease in this way, the plaintiff did nothing, but instead claims that it interpreted the memorandum of lease as constituting the entire scope of the lease agreement – an interpretation that is simply unreasonable based on the very terms of the memorandum of lease itself.

Furthermore, the plaintiff entered into the purchase agreement with Ms. Simons by way of a deed that expressly refers to the Lease, and provides that the purchase and sale was subject to the burdens and obligations of that Lease agreement as follows:

> UNDER AND SUBJECT to a certain gas and oil lease between Grantor herein and Elexco Land Services, Inc., dated July 30, 2007, and recorded in Susquehanna County Instrument No. 200709674. Said Lease was thereafter assigned by Elexco Land Services, Inc. to Southwestern Energy Production Company, dated March 17, 2008, and recorded in Susquehanna County Instrument Number 200804257. Grantor hereby assigns all her right, title and interest in said Lease to Grantee herein, its successors and/or assigns.

(Am. Compl., ¶¶ 16-17, Ex. 1.)   Despite having been on notice of the Lease's existence, and despite executing a document that expressly represents that it was subject to the terms of the Lease, the plaintiff admits that it never asked to review a copy of the Lease itself, and indeed never took steps to obtain a copy of the Lease before filing this lawsuit.   The holding in *Lund*, as applied in *Nolt*, required more of the plaintiff before it could be considered a good faith purchaser who would be entitled to set aside the lease on the basis of having had no notice.   The plaintiff's narrow argument that it was entitled to sit back and rely upon a memorandum of lease that was expressly filed "for the purpose of indicating the existence of the . . . lease" and which was expressly "not [to] be considered in any way a modification or alteration of the Lease Agreement," is unreasonable and unsupported by the law. The plaintiff was admittedly on notice of the Lease, and took ownership of the Property via a document that explicitly subjected that deed to the burdens and obligations of the Lease.   The fact that the plaintiff neglected to make any inquiry other than a cursory review of a memorandum of lease in the recording office does not now entitle the plaintiff as a matter of law to have that Lease set aside.

**C.** **The Lease Was Extended Properly Pursuant to the Terms of the Lease**

In its brief, the plaintiff appears to argue that its case rises and falls on its argument about not having had notice and being a good-faith purchaser of the

Property.  Although we find that argument to fail under Pennsylvania law, we also

note that neither the plaintiff nor Ms. Simons complied with the change of

ownership provision in the Lease, and never took any steps to inform the defendant

that the Montrose Hillbillies II, LLP were the new owners of the Property.  Instead,

the undisputed facts suggest that there was no communication at all, and the

defendant was never provided any indication that ownership of the Property had

been transferred.  The defendant was, therefore, entitled to extend the term of the

Lease pursuant to its terms by tendering Ms. Simons the extension payment equal

to $100 per acre.

> The Lease provides that
>
> No change in Lessor's ownership shall have the effect of reducing the rights or enlarging the obligations of Lessee hereunder, and no change in ownership shall be binding on Lessee until 60 days after Lessee has been furnished the original or duly authenticated copies of the recorded documents establishing such change of ownership to the satisfaction of Lessee or until Lessor has satisfied the notification requirements contained in Lessee's usual form of division order . . . .

(Def. SMF ¶ 2.)  Another court in the Middle District of Pennsylvania recently

considered a substantially similar fact pattern, and claims to quiet title, where an

oil and gas lease contained a change-of-ownership provision, and where that

provision was not complied with, leading the lessee to tender a timely lease

extension payment to the property's prior owner.  In *Danko Holdings, L.P. v.*

*EXCO Res. (PA), LLC*, 57 F. Supp. 3d 389, 398 (M.D. Pa. 2014), Judge Brann surveyed the law in Pennsylvania and other jurisdictions, in addition to several leading treatises on the subject, to conclude that the failure to comply with the change-of-ownership provision, coupled with the tender of a lease extension payment to the prior owner, was dispositive in a case where the current owner sought to quiet title:

> The requirements of the Lease's change of ownership clause are dispositive of this case.  Because the plaintiff's predecessor did not furnish the defendant's predecessor with documentation evidencing a change of ownership of the leased property, the defendants' predecessor's timely payment to [the former owner] was sufficient to extend the Lease by its own terms.

*Danko Holdings, L.P. v. EXCO Res. (PA), LLC*, 57 F. Supp. 3d 389, 398 (M.D. Pa. 2014).   Judge Brann further observed that the change-of-ownership provision operates to impose "conditions precedent to a lessee's obligation to pay rentals to a new owner of leased land." *Id.* at 395.  When that condition is left unsatisfied, a lessee is legally entitled to continue making payments – including lease extension payments – to the original lessor, in this case Ms. Simons.  *Id.*

The Court finds *Danko's* reasoning and analysis, in a substantially similar factual context, to be persuasive and compelling, and a strong indication of what

Pennsylvania's own courts would hold on similar facts.[2]   Therefore, to the extent that the plaintiff is continuing to argue that the Lease somehow terminated pursuant to its terms because the defendant tendered the lease extension payment to the original lessor, we disagree.   The undisputed facts show that the change-of-ownership provision was not followed, and hence the defendant was never given the contractually agreed-upon notice (or, it appears, any notice whatsoever) that the plaintiff was the new lessor under the Lease.   Accordingly, the "conditions precedent" to requiring the defendant to make the lease extension payment to the plaintiff were admittedly not satisfied, and the tender of payment to Ms. Simons complied with the terms of the Lease – a contract to which the plaintiff is bound, and which it acknowledged burdened the Property in the deed that the plaintiff executed at the time of purchase.   In light of these undisputed facts, we find that

---

[2]  Judge Brann noted that there is no Pennsylvania state authority "directly articulating the efficacy of a change of ownership provision in an oil and gas land lease." *Id.*  It is well-settled that "[i]n the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide [the] case." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009).  In making this prediction, courts consider "'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)).  Judge Brann's analysis in *Danko* reviewed leading judicial decisions on substantially similar facts, as well as learned treatises explaining the reasons for, and effect of, change-of-ownership provisions in oil and gas leases in predicting how the Pennsylvania Supreme Court would rule.  We find the analysis compelling and follow it here.

the plaintiff's claim to quiet title necessarily fails, and the defendants are entitled to summary judgment in their favor.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, we find that the defendants are entitled to summary judgment in their favor in this action to quiet title.  Accordingly, the defendants' motion for summary judgment shall be granted, and the plaintiff's cross-motion for summary judgment will be denied.

An appropriate order follows this memorandum.

*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  May 20, 2016